**Carroll Dwayne YOUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–99–01147–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 27, 2005.

Discretionary Review Dismissed Sept. 14, 2005.

Kenneth W. Smith, Law Office of Kenneth W. Smith, Houston, for Appellant.

Rikke Burke Graber, Assistant District Attorney, Houston, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION ON REMAND FROM THE TEXAS COURT OF CRIMINAL APPEALS

TIM TAFT, Justice.

Appellant, Carroll Dwayne Young, was charged with aggravated sexual assault of a child. Tex. Penal Code Ann. § 22.021 (Vernon 2004). A jury found appellant guilty and assessed punishment at 75 years in prison and a $5,000 fine. This Court sustained appellant's fourth point of error, reversed the judgment, and remanded the cause to the trial court. *Young v. State*, 73 S.W.3d 482 (Tex.App.-Houston [1st Dist.] 2002, pet. granted). The Court of Criminal Appeals granted the State's petition for review and reversed this Court's judgment, overruling appellant's fourth point of error.[1] *Young v. State*, 137 S.W.3d 65, 72 (Tex.Crim.App.2004). Pursuant to the Court of Criminal Appeals' order, we now address appellant's remaining complaints: (1) whether the trial court denied appellant due process by refusing his request for a competency examination; (2) whether the trial court erred by refusing to impanel a jury to determine competency; (3) whether the trial court denied appellant due process by denying his motion to recuse; (4) whether the trial court erred by refusing to allow appellant to present jurors as live witnesses at his motion-for-new-trial hearing; (5) whether the trial court deprived appellant of an adequate record on appeal by refusing to allow him to present jurors as live witnesses at the motion-for-new-trial hearing; and (6) whether the trial court erred by deny-

ing appellant's motion for new trial. We affirm.

### Facts

During 1998, appellant often visited the home of his brother and sister-in-law, who lived with their two daughters, the six-year-old complainant and her one-year-old sister. Appellant visited on weekends and spent the night several times. Appellant bought the complainant toys and often asked to take her to the movies or to eat pizza.

Appellant sexually assaulted the complainant on several occasions. Appellant touched the inside of the complainant's genitals on each of those occasions. On November 21, 1998, the complainant and her mother visited the complainant's grandmother. Her grandmother asked the complainant whether appellant had ever done anything wrong to her. The complainant said, "Yes," turned very red, and became embarrassed. Using a teddy bear, the complainant demonstrated to her grandmother how she had been touched. The complainant indicated that appellant had fondled her breasts and genitals. Later, the complainant told her grandmother about other incidents in which appellant had touched her. After the complainant had told her grandmother and mother what had happened, her mother reported the events to Children's Protective Services and took the complainant to the Children's Assessment Center, where she was examined and interviewed by Dr. Girardet. Dr. Girardet's medical finding neither proved nor disproved abuse.

---

1. Appellant's fourth point of error had contended that the trial court erred in denying a mistrial because the court and a prospective juror conversed, in front of the venire, about the fact that the prospective juror had worked with sexually abused children for 25 years and had yet to see a case in which a child was lying about the abuse. The Court of Criminal Appeals held that the error could have been cured by an instruction to disregard and that the trial court did not err in denying appellant's motion for mistrial, which was made without having objected or having asked for an instruction to disregard. *Young,* 137 S.W.3d at 72.

## Competency

■ In points of error one and two, appellant contends that the trial court erred by denying his request for a psychiatric examination for competency and by refusing to impanel a jury to determine competency to stand trial.

■ We review a trial court's decision to deny a defendant a psychiatric examination to determine competency for abuse of discretion. *Bigby v. State*, 892 S.W.2d 864, 885 (Tex.Crim.App.1994); *Hall v. State*, 808 S.W.2d 282, 285 (Tex.App.-Houston [1st Dist.] 1991, no pet.). At a pre-trial competency inquiry, the trial court determines whether there is some evidence—a quantity more than none or a scintilla—that rationally may lead to a conclusion of incompetency. *Alcott v. State*, 51 S.W.3d 596, 601 (Tex.Crim.App.2001). A person is incompetent to stand trial if the person does not have a sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against the person. Act of May 18, 1977, 65th Leg., R.S., ch. 596, S1, 1977 Tex. Gen. Laws 1458 (amended 2003) (current version at Tex. CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon Supp.2004–2005)). Only after the competency inquiry has been held and the court has determined that there is some evidence to support a finding of incompetency is it necessary to hold a competency hearing before a jury. *Alcott*, 51 S.W.3d at 601.

Appellant filed a motion for a psychiatric examination to determine competency on the day that trial was scheduled to begin. At the hearing on that motion, appellant's trial counsel stated that he believed that appellant had the capacity to reason and to think, but was "slow in obtaining ideas." Appellant's counsel claimed that appellant was suffering from a delusional disorder manifested by appellant's inability to process the consequences of his decisions. Specifically, counsel stated that appellant had decided on one particular day to plead his case, but two days later, after he had had a "visit with God" and talked to his mother, appellant changed his mind. Defense counsel also noted that appellant's previous attorney had asked if appellant was retarded and that appellant's neighbors thought of him as somewhat slow. Appellant's trial counsel also stated, however, that appellant understood ideas if they were explained to him, that appellant was able to answer questions fairly well, and that appellant did not have trouble reciting facts. Additionally, the trial court elicited from defense counsel that, during a previous recusal hearing, appellant's testimony had consisted of appropriate responses to questions on direct and cross-examination and that the reporter's record from that hearing did not reflect that appellant had misunderstood what had been asked. The court concluded that there was no evidence to support the conclusion of incompetency.

■ It is not enough for counsel to allege unspecified difficulties in communicating with the defendant; rather, such information must be specific and illustrative of a present inability to communicate with the defendant. *Moore v. State*, 999 S.W.2d 385, 394 (Tex.Crim.App.1999). An appellant's decision to oppose his attorney's recommendations, although perhaps less than tactically prudent, could as easily support a conclusion that appellant was competent as that he was incompetent. *Arnold v. State*, 873 S.W.2d 27, 36 (Tex.Crim.App. 1993). Because appellant failed to show that he lacked sufficient ability to consult with his attorney or to understand the proceedings against him, the trial court did not abuse its discretion by denying appellant's request for a psychiatric examina-

tion. Because the trial court did not abuse its discretion by finding no evidence of incompetence, neither did the court abuse its discretion by refusing to impanel a jury to hear the issue. *See Alcott*, 51 S.W.3d at 601.

We overrule appellant's first two points of error.

### Motion to Recuse

■ In point of error three, appellant contends that the trial court erred in denying his motion to recuse. Specifically, appellant contends that the trial court was disqualified because it had demonstrated bias during the competency hearing, voir dire, and trial by tending to side with the State on objections and allegedly assuming the role of prosecutor.[2]

However, in appellant's motion to recuse, he contended that the trial court should be disqualified for being a fact witness in a grievance proceeding against appellant's original attorney and because the court set appellant's case for trial the same day that another of appellant's convictions had become final.

■ An appellant's trial objection must comport with his objection on appeal, or error is waived. Tex.R.App. P. 33.1(a)(1)(A); *Penry v. State*, 903 S.W.2d 715, 753 (Tex.Crim.App.1995). Because the ground in appellant's trial motion does not comport with his assertions on appeal, any error is waived. *See* Tex.R.App. P. 33.1(a)(1)(A).

We overrule point of error three.

### Motion for New Trial

■ In points of error five through seven, appellant contends that the trial court erred in refusing his request to present jurors as live witnesses at the hearing on the motion for new trial, thus denying him an adequate record on appeal, and that the court erred in denying his motion for new trial. Appellant's requested remedy is to remand for a hearing on his motion for new trial with orders for the trial court to allow appellant to subpoena the jurors.

■ It is well established that the granting or denying of a motion for new trial lies within the discretion of the trial court. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995). We do not substitute our judgment for that of the trial court, but, rather, decide whether the trial court's decision was arbitrary or unreasonable. *Id.*

In his motion for new trial, appellant contended that the jurors were prejudiced by (1) a bailiff's efforts to inform them that appellant was incarcerated, by leaving appellant's shirt in the holdover cell area and clanking the holdover cell door during breaks in the trial, and (2) a deputy's remark in the presence of the jurors that appellant was a "Bible-toting pervert." Appellant supported his motion with affidavits from appellant's two holdover cellmates, who swore that they had heard a bailiff make the "pervert" statement in front of the jurors, and with his own affidavit, swearing that his shirt had been left in the holdover cell area, that the holdover cell door made clanking noises when he was incarcerated during trial breaks, and that he had told his trial attorney immediately after lunch recess the second day of trial that some of the prisoners had heard a deputy insult appellant. After the trial, in an attempt to corroborate the allega-

---

2. In reality, appellant could not have complained about the trial judge's behavior in the competency hearing, voir dire, or trial in his motion to recuse because the motion was filed on August 16, 1999, which was before the competency hearing, voir dire, or trial that all occurred on or after August 20, 1999.

tions of misconduct, appellant's counsel tried to contact jurors by phone and mailed them affidavits in the form of questionnaires.

Despite the trial court's having advised the lawyers for both sides that it would conduct the hearing on appellant's motion for new trial by affidavits, appellant's counsel attempted to subpoena the jurors. Having filed the request for subpoenas at central filing, rather than with the courtroom clerk, however, the process server did not receive the subpoena requests timely enough to serve them. During the initial hearing on the motion for new trial, appellant's counsel asked the trial court for additional time to subpoena the jurors. The trial court repeated its determination that the hearing would be conducted by affidavits rather than live testimony. The trial court asked if appellant's counsel would still like 10 days to supplement the record, and, when appellant's counsel said that he would, the trial court reset the hearing on appellant's motion for new trial until 10 days later.

At the second hearing on appellant's motion for new trial, the trial court asked if appellant's counsel had anything more to offer. Counsel requested the opportunity to subpoena jurors to present live witnesses. When the trial court expressed surprise that defense counsel had not done so already, appellant's counsel said that he had not done so because the trial court had specifically told him that it would not allow the jurors to be called to testify. When the trial court asked if there had been any efforts on counsel's behalf to contact the jurors to see if they would provide affidavits, counsel said that he had previously contacted them both in writing and orally, that two of the 12 had responded in writing, that he had spoken with several who had actually answered the phone, that he had most of them on voice mail, and that he left messages more than once with some who would not respond. At the first hearing, appellant's counsel had said that there was a clear pattern that the jurors did not wish to respond to his questions and that "for whatever reason they in unison almost have refused to respond in any way."

▮▮▮ Nothing prevents counsel from contacting jurors and attempting to elicit information from them; however, jurors have no obligation to cooperate with defense counsel's investigation. See TEX.R. EVID. 606(b); Jackson v. State, 992 S.W.2d 469, 475 (Tex.Crim.App.1999). At the motion-for-new-trial hearing, appellant's counsel recognized that jurors have a right not to talk to him, but urged the court to allow him to subpoena jurors as the only way he could obtain their testimony about the incidents raised in appellant's motion for new trial. On appeal, appellant recognizes that subpoenas may not be used as a post-verdict discovery vehicle just because jurors are uncooperative. Appellant claims that he has brought himself within the exception to this rule by showing there was an outside influence on the jurors.

Appellant relies on Stephenson v. State, 494 S.W.2d 900 (Tex.Crim.App.1973). In Stephenson, defense counsel had subpoenaed three jurors who had told counsel about certain jury misconduct and who[3] had said that they would not sign affida-

---

**3.** This was at a time when jurors could be questioned about jury misconduct occurring during jury deliberations. Present rule 606(b) of the Texas Rules of Evidence does not allow a juror to testify, or to offer an affidavit, as to any matter or statement occurring during the jury's deliberations. See TEX.R. EVID. 606(b). As appellant points out, however, a juror may still testify about outside influences impacting the jury, which is what appellant is raising here. See id.

vits, but had indicated that they would testify if subpoenaed. *Id.* at 908. Even though the jurors were present and willing to testify, the trial court refused to allow them to do so because there had been no affidavit, of a juror or other person in a position to know the facts, attached to the motion for new trial. *Id.* The Court of Criminal Appeals held that the defense attorney's affidavit, swearing to the facts of his conversations with the jurors, was sufficient to have allowed him to present the testimony of the witnesses. *Id.* at 909. Nevertheless, the error in the trial court's disallowing the jurors to testify was found to be harmless in the absence of any testimony or proffer of testimony offered by defense counsel as to what the witnesses would have said. *Id.*

Texas Rule of Appellate Procedure 21.7 allows the trial court in a criminal case to receive evidence on a motion for new trial by affidavit or otherwise. TEX.R.APP. P. 21.7. Here, the trial court recognized appellant's right to have a hearing on his motion for new trial, but determined the issue could be decided by affidavits. Counsel for appellant claimed to be unable to obtain affidavits because the jurors would not give them. There are two notable factors that may have caused the trial court to decide to hold the hearing by affidavit and not to trouble the jurors in this case by requiring their live testimony. First, the trial court may have decided to hear the matter by affidavit because appellant admitted in his sworn motion for new trial that he had informed his trial attorney about the bailiff's insult just after the lunch recess of a trial that continued for the rest of the day; nonetheless, counsel had failed to bring the matter to the trial court's attention at that time, even though the jurors were still present at the court to be questioned about whether they had heard any such remark. Second, the trial court may have been unpersuaded to

change its ruling regarding hearing the matter by affidavit based on defense counsel's failure either: (1) to proffer to the court what he had learned from those jurors with whom he had communicated; or (2) to make any further efforts during the 10 days the trial court had continued the hearing.

Moreover, defense counsel did not attempt to bring himself within the *Stephenson* case by subpoenaing the jurors for the second hearing in hopes that one of them would be willing to testify to the matter asserted. Although the trial court indicated that it would proceed by affidavit only, it did not prohibit counsel from issuing subpoenas, nor did the State move to quash the subpoenas the first time that counsel requested them. Defense counsel had initiated an attempt to subpoena the jurors for the first hearing, despite the trial court's having made it clear that the hearing would be by affidavit. Because the trial court began the second hearing by asking if defense counsel had subpoenaed the jurors, it appears that defense counsel missed an opportunity to present jurors as witnesses if any could support appellant's claims. It also appears that counsel did nothing further in the 10 days that the trial court gave him to secure further evidence supporting his motion for rehearing. If any efforts had been made to locate the deputy who allegedly had made the insulting remarks, counsel did not inform the trial court about those efforts.

It is noteworthy that appellant is not complaining about a denial of compulsory process. It is understandable that he makes no such argument on appeal, having failed to alert the trial court regarding such a complaint at trial. Under the totality of these circumstances, we hold that the trial court did not abuse its discretion in conducting the hearing on appellant's

motion for new trial by affidavit and denying it.

We overrule appellant's points of error five through seven.

### Conclusion

We affirm the judgment of the trial court.

Justice JENNINGS, concurring.

TERRY JENNINGS, Justice,
Concurring Opinion on Remand from the Court of Criminal Appeals.

I fully join the majority opinion in its discussion of appellant's points of error one through three. However, I write separately to concur in the majority's decision to overrule appellant's points of error five through seven.

In points of error five through seven, appellant argues that the trial court erred in denying his motion for new trial because the court erroneously refused to allow him to present jurors as live witnesses, depriving him of an adequate appellate record and his federal due process rights.[1] Appellant requests that this Court abate the appeal "with orders to allow [him] to call jurors as witnesses at another motion for new trial hearing."

In support of his argument, appellant relies on *Stephenson v. State*, 494 S.W.2d 900, 909 (Tex.Crim.App.1973), in which the Court of Criminal Appeals held that a trial court erred in refusing to allow, in a hearing on a motion for new trial, juror testimony concerning juror misconduct. In reaching its decision, the court discussed the general rule that "a motion for new trial alleging jury misconduct must be supported by the affidavit of a juror or some other person who was in a position to know

the facts." *Id.* at 908–09. Although the court emphasized that the rule is necessary "to discourage 'fishing expeditions' in an effort to impeach a jury verdict," it explained that "such an affidavit is not absolutely necessary but that the failure to secure it might satisfactorily be explained or accounted for, in which event it would be the duty of the trial court to hear evidence in support of the allegations." *Id.* (quoting *Clark v. State*, 163 Tex.Crim. 54, 289 S.W.2d 288, 290 (1956)). The court concluded that the trial court had erred because Stephenson's counsel, in his motion for new trial, had specified by name three jurors who had related juror misconduct to him, and he explained that they had refused to sign affidavits, although they had assured him that they would testify to the facts alleged if subpoenaed. *Id.* at 909.

Subsequently, in overruling a defendant's contention that a trial court had deprived him of effective assistance of counsel by "quash[ing] post-trial defense subpoenas for jurors," the Court of Criminal Appeals explained that, assuming that the defendant was entitled to subpoena the jurors as witnesses under the Compulsory Process Clause,[2] "the defendant would bear the burden of showing that the testimony sought is material." *Jackson v. State*, 992 S.W.2d 469, 476 (Tex.Crim.App. 1999). The court then emphasized that *Stephenson* was distinguishable from Jackson's case because (1) Stephenson had provided evidence that the jurors actually possessed information material to the motion for new trial and (2) his counsel had, in fact, interviewed the jurors who had expressed a willingness to testify. *Id.*

Likewise, in the instant case, although appellant has satisfactorily explained his inability to obtain affidavits from jurors, he

---

1. U.S. CONST. amends. V, XIV.

2. U.S. CONST. amend. VI.

has not shown that the jurors actually possessed information material to his motion for new trial or that his counsel had talked to jurors who had expressed a willingness to testify.

Although appellant does not expressly assert a compulsory process challenge, he is in fact requesting that this Court order the trial court to allow him to compel all 12 jurors in his case to testify in a live hearing on his motion. However, it is well established that, in order to exercise a compulsory process right, "[a] defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense." *Coleman v. State*, 966 S.W.2d 525, 528 (Tex.Crim.App.1998). It is true that a defendant who has not had an opportunity to interview a witness may make the necessary showing by establishing the matters to which the witness might testify and the relevance and importance of those matters to the success of the defense. *Id.* Nevertheless, the defendant must meet the burden of showing materiality and favorableness to prevent "frivolous and annoying requests" that could make the proceeding "endless and unduly burdensome on the Court and all officers thereof." *Id.* (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir.1983)).

Even if appellant had expressly asserted a compulsory process challenge, his argument that this Court should order the trial court to allow him to compel all 12 jurors in his case to testify in a live new-trial hearing fails. Although appellant presented his affidavit and the affidavits of two of his holdover cell mates to the trial court in support of his motion, a review of these affidavits reveals that the trial court could have reasonably found that this evidence was simply too tenuous to support bringing all 12 jurors back into court. Addition-

ally, appellant did not demonstrate that any of the 12 jurors actually would have provided testimony both material and favorable to him in his effort to secure a new trial. The record thus supports an implied finding by the trial court that compelling the jurors to come back to court under these circumstances would have resulted in a fishing expedition to impeach their verdict.

Accordingly, I concur in the majority's conclusion that the trial did not abuse its discretion in denying appellant's motion for new trial on the grounds that the trial court erroneously refused to allow appellant to present the jurors as live witnesses.