Opinion issued July 3, 2008











     







In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00930-CR




HOLLIS QUINTON GRIZZARD, III, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 412th District Court
Brazoria County, Texas 
Trial Court Cause No. 50561




MEMORANDUM OPINION
          Appellant, Hollis Quinton Grizzard, III, appeals the trial court’s judgment
convicting him for sexual assault of a child and indecency with a child. See Tex.
Penal Code Ann. § 21.11 (Vernon 2003) (indecency with child); id. § 22.021
(Vernon 2007) (sexual assault of child). Appellant pleaded not guilty, the jury found
him guilty, and the jury determined his sentence at 12 years in prison for the sexual
assault and 10 years community supervision for the indecency with a child. In two
issues concerning the sentencing phase of trial, appellant contends that the trial court
erred by conducting the sentencing phase of trial in his absence and by failing to
appoint a qualified mental health expert to examine appellant prior to the sentencing
phase of trial. We conclude that the trial court did not err by conducting the
punishment phase without appellant because appellant voluntarily absented himself
by attempting suicide. We also conclude that the trial court did not err by failing to
appoint a mental health expert because its informal inquiry revealed that appellant
had sufficient present ability to consult with this attorney with a reasonable degree
of rational understanding. We therefore affirm. 
Background
          Appellant was a teacher at Pearland High School. He taught communication
and coached the school’s debate team. L.B. was a student in one of appellant’s classes
and was also a member of the debate team. At the time, L.B. was 15 years old and in
the tenth grade. During the fall semester, L.B. began having personal problems at
home and talked to appellant about those problem, resulting in a close friendship
between the two. Appellant and L.B. talked on the phone and on the computer before
and after school. Appellant became a source of comfort to L.B., encouraging her to
go see the school counselor about her problems at home.
          The two also spent time together in the closet of appellant’s classroom on many
occasions. During one of these encounters in the classroom closet, appellant grabbed
L.B. and kissed her on the mouth. After this encounter L.B.’s relationship with
appellant developed further, with an increasing amount of phone calls and computer
conversations between the two. L.B. would often spend time in appellant’s classroom
before class started. On one of these occasions, L.B. and another debate team
member, K.M., were sitting in the debate classroom before school started. L.B. got
upset and began playfully wrestling on the ground with appellant, this being a
common activity between the two. On one occasion, after L.B. and appellant had
been wrestling, appellant took L.B. into the classroom closet and placed his fingers
inside L.B.’s underwear and touched her genital area. 
          On two separate occasions, appellant asked L.B. to touch his male sexual
organ. One of these incidents took place in the library at the University of Houston
during a debate tournament. L.B. and appellant went to the library together and
appellant took L.B. to a private room in the library, took out his male sexual organ
and told appellant to touch it. Appellant acknowledges that he went into the library
alone with L.B. but claims that he had no sexual contact with her at that time.
          K.S., another debate team member was also inappropriately touched by
appellant in the debate room closet. The two were in the closet alone so appellant
could speak privately with K.S. While there, appellant touched K.S. on her breast and
pulled her onto his lap, after which a struggle ensued.
          In October 2005, another member of Pearland High School’s debate team, S.L.,
walked into the debate classroom and found appellant leaning over L.B., kissing her. 
S.L. reported the incident to another teacher at Pearland High School. Once the
principal of the school was alerted of the situation, an investigation into the incident
began. Initially, L.B. told her friend K.M. and the principal that she initiated the kiss
with appellant. Later, when L.B. was talking to the police, she admitted that appellant
kissed her and that it was not the first time. L.B. acknowledged that she and appellant
concocted the story that L.B. initiated the kiss. Appellant persisted in telling the
school and investigators that L.B. initiated the kiss, and that she kissed him before on
another occasion in the hallway outside his classroom. 
          A police investigation into the allegations led to the arrest of appellant. At the
time he was arrested, appellant was in a psychiatric hospital. Additionally, during the
police investigation, before he was arrested, appellant was treated on two occasions
by a psychologist.
          Appellant did not appear for the sentencing phase of trial that was to begin the
day after the jury found him guilty. Prior to the start of evidence, appellant’s trial
attorney reported to the court that, although appellant was present in the courthouse,
he was incoherent and unable to participate in the sentencing phase of trial. Defense
counsel stated, “I don’t know if it’s alcohol or if there is drugs. I really can’t tell if
this is something that has been self-induced or if its something involving chemicals.” 
Defense counsel stated that appellant had previously been in “altered states.” 
          The trial court interviewed appellant’s wife, in order to determine the cause of
the appellant’s behavior. Appellant’s wife recalled that appellant’s incoherent state
began when he woke up in the morning. She noted that appellant had experienced the
altered state before, suffered from Post Traumatic Stress Syndrome, and typically
recovered from that altered state in about 24 hours. Appellant takes a variety of
prescription medications, including codeine for back pain, cyclobenzaprine for back
spasms, the generic version of Flexeril for depression, and high blood pressure
medication. That morning, appellant’s wife found an empty bottle of muscle relaxers,
but believed the bottle did not have much in it when she last saw it. The trial court
ordered that appellant be taken to the probation department for testing. Upon a motion
from the prosecuting attorney, the trial court revoked appellant’s bond, holding him
without bail pending the completion of the trial.
          The next day, appellant did not appear for the sentencing phase of trial. His
treating physician testified that appellant was at Angleton Danbury Hospital, where
he was completely unconscious when he arrived the night before. Appellant’s doctor
further testified that, the next morning, appellant was able to tell the doctor that he
had tried to commit suicide by taking several OxyContins, several Vicodins, and
several Trazodones. After this testimony, the prosecuting attorney argued that
appellant had voluntarily absented himself from the sentencing phase of trial by
attempting to commit suicide. The trial court determined that appellant voluntarily
made himself absent from the proceedings and scheduled the sentencing phase to
begin later that day. 
          Later that afternoon, immediately before the punishment phase began, defense
counsel told the trial court that he had just met with appellant, who was still in the
hospital under physician’s care. Defense counsel communicated that appellant was
aware of what was going on and wanted to participate in the punishment phase of the
trial, but due to his medical condition was not able to be present. When asked by the
trial court if he objected to the continuation of the punishment proceeding, defense
counsel answered that he was not objecting.
          In the sentencing phase of the trial, defense counsel called several character
witnesses to testify on appellant’s behalf. Appellant’s sister testified that appellant
had Post Traumatic Stress Disorder since returning from Afghanistan, where he
served in the military. Appellant also suffered from extreme back pain, caused by
injuries from his time in the military. Appellant’s wife stated that appellant had a
serious back injury and that, although physical therapy was improving the condition,
termination of such treatment would result in near paralysis of his back. Appellant’s
wife also reported that he attended psychiatric or psychological counseling once a
week, and that if for some reason appellant could no longer receive such counseling
he would “break down.” After the jury’s verdict in the sentencing phase of trial,
appellant was sentenced by the trial court, when he appeared in person. 
          Although appellant filed a notice of appeal on the same day he was sentenced,
appellant’s trial counsel withdrew and appellant was appointed an attorney, who filed
a Motion for New Trial a month later. In response to the withdrawal of trial counsel,
appellant’s notice of appeal was abated by this Court in November 2006 and
remanded to the trial court to determine whether appellant was indigent and in need
of court-appointed counsel. At the hearing on appellant’s Motion for New Trial,
appellant’s counsel argued that improper extraneous evidence, in the form of
testimony from K.S., was erroneously admitted during trial, causing irreparable harm
to the defendant. In December 2006, in response to the abatement order from this
Court, the trial court held an indigency hearing, found appellant indigent and
appellant’s counsel stated that appellant intended to appeal.
Defendant’s Absence from Sentencing Phase of TrialIn his first issue, appellant contends that the trial court abused its discretion
when it proceeded to the sentencing phase of trial without the appellant present. 
Specifically, appellant claims that the court erred in determining that appellant had
voluntarily absented himself from the sentencing phase of trial when he attempted to
commit suicide because the attempt was due to his mental illness and was therefore
not voluntary. 
          Assuming, without deciding, that appellant has not waived this issue, we
address the merits of appellant’s claim that the trial court erred when it determined
appellant was voluntarily absent and proceeded to the sentencing phase. We review
a trial court’s determination that a defendant has voluntarily absented himself from
trial under the abuse of discretion standard. See In re C.T.C., 2 S.W.3d 407, 409
(Tex. App.—San Antonio 1999, no pet.); Moore v. State, 670 S.W.2d 259, 261 (Tex.
Crim. App. 1984). The trial court abuses its discretion if its decision is arbitrary or
unreasonable. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). When
determining the validity of a trial court’s decision that the defendant voluntarily
absented himself from trial, an appellate court does not have to look solely to the
evidence before the trial court at the time of the ruling, it can also consider evidence
that develops subsequent to the trial court’s ruling on voluntariness. Moore, 670
S.W.2d at 261. 
          The issue of voluntary absence from trial is guided by article 33.03 of the
Texas Code of Criminal Procedure, which provides, in pertinent part:In all prosecutions for felonies, the defendant must be personally present
at the trial, and he must likewise be present in all cases of misdemeanor
when the punishment or any part thereof is imprisonment in jail;
provided, however, that in all cases, when the defendant voluntarily
absents himself after pleading to the indictment or information, or after
the jury has been selected when trial is before a jury, the trial may
proceed to its conclusion.
 
Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon 2006). The defendant has
voluntarily absented himself from trial when he is not in the courtroom, but in the
hospital, because he has attempted suicide by ingestion of medication. Bottom v.
State, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.); see also Maines
v. State, 170 S.W.3d 149, 150 (Tex. App.—Eastland 2005, no pet.) (determining that
defendant voluntarily absented himself from trial when he chose to overdose on
prescription drugs); Heard v. State, 887 S.W.2d 94, 98–99 (Tex. App.—Texarkana
1994, pet. ref’d) (holding absence voluntary when caused by self-induced intoxicated
condition). 
          Appellant was present during the entire guilt-innocence phase of the jury trial,
including when the jury was selected. On the day in which the punishment phase of
trial was to begin, appellant was present in the courthouse, but not the courtroom. 
Appellant’s trial attorney told the trial court that appellant was incoherent, after which
the trial court sent appellant for testing. The next day, while appellant was in the
hospital, appellant told his treating physician that he tried to commit suicide by
ingesting large quantities of medication. The trial court then ruled that appellant had
voluntarily absented himself from trial. The sentencing phase of the trial proceeded
later that afternoon, without objection from defense counsel. Because appellant was
present to plead to the indictment and during jury selection, his voluntary absence
does not preclude the continuation of the trial to conclusion. See Tex. Code Crim.
Proc. Ann. art. 33.03. Appellant admitted to his treating physician that he was
absent from the sentencing phase of trial because he chose to ingest large amounts of
medication, in an attempt to commit suicide. Appellant’s choice to ingest medication
in an attempt to commit suicide, which results in his absence from the sentencing
phase of trial, is his decision to voluntarily absent himself from trial. See Bottom, 860
S.W.2d at 267; see also Maines, 170 S.W.3d at 150. Therefore, the trial court did not
abuse its discretion when it held that appellant had voluntarily absented himself from
trial when he was in the hospital due to his attempt to commit suicide by ingesting
large quantities of medication.
          We overrule appellant’s first issue.
Mental Health Expert
          In his second issue, appellant contends that the trial court abused its discretion
when it failed to appoint a qualified mental health expert to examine appellant prior
to sentencing. Specifically, appellant claims the trial court erred by failing to conduct
a competency hearing because it heard evidence that would support a finding that
appellant may have been incompetent to stand trial. 
          We review a trial court’s decision not to appoint a mental health expert and
conduct a competency hearing under an abuse of discretion standard. Rojas v. State,
228 S.W.3d 770, 772 (Tex. App.—Amarillo 2007, no pet. h.); Young v. State, 177
S.W.3d 136, 39–40 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A person is
incompetent to stand trial if the person does not have (1) sufficient present ability to
consult with the person’s lawyer with a reasonable degree of rational understanding
or (2) a rational as well as factual understanding of the proceedings against the
person. Tex. Code Crim. Proc. Ann. art. 46B.003(a) (Vernon 2006). A defendant
is presumed competent to stand trial and shall be found competent to stand trial unless
proved incompetent by a preponderance of the evidence. Id. art. 46B.003(b). Either
party may suggest by motion, or the trial court may suggest on its own motion, that
the defendant may be incompetent to stand trial. Id. art. 46B.004(a). If evidence
suggesting the defendant may be incompetent to stand trial comes to the attention of
the court, the court on its own motion shall suggest that the defendant may be
incompetent to stand trial. Id. art. 46B.004(b). On suggestion that the defendant may
be incompetent to stand trial, the court shall determine by informal inquiry whether
there is some evidence from any source that would support a finding that the
defendant may be incompetent to stand trial. Id. art. 46B.004(c). If the court
determines there is evidence to support a finding of incompetency, the court shall stay
all further proceedings in the case. Id. art. 46B.004(d). If after an informal inquiry
the court determines that evidence exists to support a finding of incompetency, the
court shall order an examination under Subchapter B to determine whether the
defendant is incompetent to stand trial in a criminal case. Id. art. 46B.005(a). It is
not required that a trial be conducted to determine the competency of the defendant
if (1) no party’s counsel requests a trial on the issue of incompetency, (2) no party’s
counsel opposes a finding of incompetency, or (3) the court does not, on its own
motion, determine that a trial is necessary to determine incompetency. Id. art.
46B.005(c).
          The record shows that the trial court conducted an informal inquiry into
appellant’s competence to stand trial. The day after appellant was found guilty,
appellant’s trial counsel announced, “we don’t believe that [appellant] is competent
at this time to be able to assist us” in the sentencing phase of trial due to his
incoherence from an unknown cause. In response to that representation, the trial
court interviewed appellant’s wife to determine the origin of appellant’s behavior. 
At the State’s request, the trial court sent appellant to the probation department for
testing. Appellant was subsequently treated at the Angleton Danbury Hospital. The
next day, the State called the doctor who treated appellant at the hospital. The doctor,
an internist, testified that appellant’s altered state was caused by appellant’s voluntary
overdose of prescription medication. The court then ruled that the punishment phase
of the trial was to continue because appellant had voluntarily absented himself from
trial. The process, from the time appellant’s counsel alerted the court of appellant’s
incoherent behavior until the time the judge ruled that the sentencing phase would
continue was an “informal inquiry” into appellant’s competence to stand trial. See
Tex. Code Crim. Proc. Ann. art. 46B.004(a)–(c); Rojas, 228 S.W.3d at 771–72
(informal inquiry consisted of trial court questioning defendant and his counsel about
their level of communication and possible discussion of topic of incompetency off
record); Lawrence v. State, 169 S.W.3d 319, 323– 25 (Tex. App.—Fort Worth 2005,
pet. ref’d) (informal inquiry consisted of pre-trial questions from judge to defendant
regarding his understanding of proceeding, whether he had consulted with his
attorney, questions about prior psychiatric counseling and whether attorney felt
defendant was competent to stand trial).
          Appellant acknowledges in his brief that after a “suggestion” of incompetence,
the trial court conducted an “informal inquiry” into whether appellant was competent
to stand trial. Appellant complains that the trial court abused its discretion by failing
to appoint a mental health expert to examine appellant and conduct a subsequent
formal competency hearing. The court must appoint a mental health expert if there
is some evidence to suggest incompetency. See Tex. Code Crim. Proc. Ann. arts.
46B.004(d), 46B.005(a). At the informal competency inquiry, the defendant must
produce some evidence to the trial court “sufficient to support a finding of
incompetence” in order to require a formal competency hearing. McDaniel v. State,
98 S.W.3d 704, 710–11 (Tex. Crim. App. 2003). A person is incompetent to stand
trial if the person does not have a sufficient present ability to consult with the
person’s lawyer with a reasonable degree of rational understanding or a rational as
well as factual understanding of the proceeding against the person. Young, 177
S.W.3d at 139 (citing Tex. Code Crim. Proc. Ann. art. 46B.003(a)) This Court’s
examination of appellant’s conduct at trial must focus on whether such conduct was
an indication appellant was incompetent to stand trial under the statutory standard.
Rojas, 228 S.W.3d at 772. 
          We cannot conclude that the trial court abused its discretion by determining,
after it conducted the informal hearing, that appellant, at the time the sentencing
phase of trial began, did have sufficient present ability to consult with his attorney
reasonable degree of rational understanding or a rational as well as factual
understanding of the proceedings against him. See Tex. Code Crim. Proc. Ann. art.
46B.003(a). By the time that the sentencing phase of trial began, the trial court knew
(1) appellant was competent throughout the guilt-innocence phase of trial; (2)
appellant’s altered state was caused by the appellant’s voluntary overdose of
prescription medication, according to his medical doctor; (3) appellant’s wife said
that appellant’s altered states usually did not last for more than 24 hours and more
than 24 hours had passed from the time appellant appeared to be in the altered state;
and (4) appellant had met with his trial attorney immediately before the sentencing
phase began and the attorney represented to the court that appellant was aware of
what was going on and wanted to participate in the punishment phase of the trial, but
due to his medical condition was not able to be present. We hold the trial court did
not abuse its discretion by not finding some evidence of incompetency and by not
appointing a mental health expert to examine appellant.
          We overrule appellant’s second issue.
Conclusion
We affirm the judgment of the trial court.
 
                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Nuchia, Alcala, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).