

# NUMBER 13-06-00298-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

EUGENE MERCIER,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.

### On appeal from the 332nd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION ON REMAND

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion On Remand by Justice Benavides**

This appeal is before us for the third time. *See State v. Mercier*, 164 S.W.3d 799 (Tex. App.—Corpus Christi 2005, pet. ref'd) (*Mercier I*); *Mercier v. State*, No. 13-06-00298, 2009 WL 2568592 (Tex. App.—Corpus Christi 2009), *rev'd*, 322 S.W.3d 258 (Tex. Crim. App. 2010) (*Mercier II*). In the second appeal, we concluded that the

State's indictment was fatally defective, did not require a harm analysis, and accordingly, reversed and rendered judgment that dismissed the State's prosecution. *See Mercier II*, 2009 WL 2568592, at **1–6. The Court of Criminal Appeals agreed with our decision, insofar as concluding that the indictment's defect was one of substance, clarified the law, and remanded back to our Court to conduct a harm analysis on this issue and to address the remaining issues should we find no harm. *See Mercier II*, 322 S.W.3d at 263–64.[1] We affirm.

## I. LIMITATIONS ISSUE ON REMAND

After concluding in *Mercier II* that the State's indictment contained a substance defect, we must now evaluate whether such a defect resulted in harm sufficient to require reversal. *See* TEX. R. APP. P. 44.2(b); *Mercier II*, 322 S.W.3d at 263–64; *see also* 42 GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 26:90 (3d ed. 2011) (recognizing that the court of criminal appeals requires a rule 44.2(b) harm analysis for substance defects in charging instruments).

Errors in criminal cases which are non-constitutional must be disregarded unless they affect the substantial rights of the defendant. *See* TEX. R. APP. P. 44.2(b). "Substantial rights" have been characterized into two components with regard to a charging defect: (1) the right to demand the nature and cause of the accusation; and (2) the right to have this notice from the face of the charging instrument. *See Adams v.*

---

[1] The procedural and factual histories of this case were set forth in our first and second opinions, and we incorporate them herein. *See State v. Mercier*, 164 S.W.3d 799 (Tex. App.—Corpus Christi 2005, pet. ref'd) (*Mercier I*); *Mercier v. State*, No. 13-06-00298, 2009 WL 2568592 (Tex. App.—Corpus Christi 2009), *rev'd*, 322 S.W.3d 258 (Tex. Crim. App. 2010) (*Mercier II*). Because this case is on remand, before us for the third time, and the parties are familiar with the factual and procedural histories of this case, we will not repeat them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.1, 47.4.

*State*, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986) (en banc). These rights are not independent, however, because the right to notice derives from the right to demand the nature and cause of that accusation. *Id.* A criminal defendant bears the burden of explaining to a reviewing court which substantial rights were harmed, and how that harm came about. *See* G. DIX & J. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 26:89 (3d ed. 2011).[2]

This requires our Court to review the record and determine whether a defendant had adequate notice to prepare his defense. *Adams*, 707 S.W.2d at 903. If sufficient notice is given, our inquiry ends. *Id.* If not, we must decide whether the lack of notice had an impact on the defendant's ability to prepare a defense and finally, how great an impact. *Id.*; *see Gollihar v. State*, 46 S.W.3d 243, 247–48 (Tex. Crim. App. 2001) (recognizing that in determining whether a defendant's substantial rights have been prejudiced in a notice-related problem, the appellate court must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime).

In supplemental briefing—ordered by this Court following *Mercier II*—Mercier essentially argues that allowing the State to prosecute him despite the indictment's substance defect skirts the Legislature's mandate to bar certain offenses by limitation. *See* TEX. CODE CRIM. PROC. ANN. art. 28.06 (West 2006). The statute of limitations "is

---

[2] We recognize that the Court of Criminal Appeals has left the relationship between *Adams v. State*, 707 S.W.2d 900 (Tex. Crim. App. 1986), and Texas Rule of Appellate Procedure 44.2(b) uncertain. *See* 42 GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 26:90 (3d ed. 2011). Until we receive further guidance on this issue, we will utilize *Adams* in our harm analysis.

an act of grace" for the benefit of potential defendants—that is, "a voluntary surrendering by the people of their right to prosecute." *Proctor v. State*, 967 S.W.2d 840, 843 (Tex. Crim. App. 1998) (en banc). The purposes served by this legislative act of grace are to (1) protect defendants from having to defend themselves against charges when the basic facts may—or may not—have become obscured by time; (2) prevent prosecution of those who have been law-abiding for some years; and (3) lessen the possibility of blackmail. *Id.* The statute of limitations is a rule of procedure, in the nature of a defense, for the benefit of defendants. *Id.*

Here, the State's initial indictment against Mercier was within the requisite three-year statutory limitations period for charging. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(7) (West Supp. 2011) (articulating a three-year catch-all limitations provision for all felonies not expressly listed). As noted in *Mercier II*, Mercier acknowledged that the limitations period to prosecute him for the alleged offenses was October 1, 2000, which made the State's initial indictment on March 31, 2000 valid; but made the re-indictment on December 19, 2001 invalid because the State did not plead tolling factors to prevent the re-indictment from giving the appearance that the prosecution is barred by a lapse of time. *Mercier II*, 2009 WL 2568592 at *1; *see* TEX. CODE CRIM. PROC. ANN. art. 27.08(2).

However, despite the substance defect in the re-indictment, recognized by this Court and affirmed by the Texas Court of Criminal Appeals, automatic reversal is not warranted. Instead, we must evaluate for harm. *See* TEX. R. APP. P. 44.2(b); *Mercier II*, 322 S.W.3d at 263–64. We begin our analysis by first determining whether Mercier had adequate notice to prepare his defense despite the substance defect. *See Adams*,

4

707 S.W.2d at 903.   We conclude that he did.

The record indicates that the initial indictment, filed on March 21, 2000, alleged by two counts that Mercier entered into an agreement with Kent Plambeck on or about September 30, 1997 to commit the felony of barratry.   These two counts were brought forth again in the December 19, 2001 re-indictment and made the basis of this issue on appeal.   Mercier fails to show how his substantial rights were prejudiced by this re-indictment.   Instead, the record shows the contrary.   Mercier received adequate notice of these counts prior to the re-indictment through the initial indictment.   *See Ex parte Smith*, 178 S.W.3d 797, 805 (Tex. Crim. App. 2005) (acknowledging that despite the State's deficient job of pleading its tolling allegation, the defendant had "full knowledge of the existence and content of the prior indictment which tolled the present pleading").

We also note that the trial court instructed the jury to make a determination whether the offense in the case was filed within three years of the date of the offense alleged in the indictment.   This instruction further supports that the defect was harmless because Mercier's limitations defense was also before the jury.   *See Proctor*, 967 S.W.2d at 844 (holding that a defendant may assert a limitations defense pre-trial through a motion to dismiss, or at trial by requesting a jury instruction on limitations).   "If there is some such evidence and the defendant requests a jury instruction on the limitations defense, then the State must prove beyond a reasonable doubt that the prosecution is not limitations-barred."   *Id.*

Accordingly, because we conclude that Mercier was on notice from the prior indictment and not deprived of a meaningful limitations defense at trial, the State's

defective re-indictment on December 19, 2001 was harmless error that did not affect Mercier's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Adams*, 707 S.W.2d at 903. Mercier's first four issues are overruled.

## II. REMAINING ISSUES

We now address Mercier's remaining issues on appeal, including the State's cross-appeal.

By Mercier's remaining issues, which we merge and reorganize as two,[3] Mercier contends that the trial court erred by (1) sentencing him in its March 23, 2006 orders; and (2) in denying Mercier's motion for new trial.[4] The State files a cross-appeal in which it asserts that the trial court erred in setting aside its original March 23, 2006 judgment and resentencing Mercier to a lower sentence on May 26, 2006.

### 1. The March 23, 2006 and May 26, 2006 Sentencing Orders

Mercier asserts that the trial court was obligated by Texas law to reinstate the jury's verdict—pursuant to this Court's mandate in *Mercier I*—prior to sentencing him on March 23, 2006 (the March 23 order). He further asserts that the trial court's error on March 23 makes it void, and the trial court's order on May 26, 2006 (the May 26 order) controls. On the other side, the State contends that the trial court's plenary power expired before the May 25, 2006 hearing, and therefore, the March 23 order controls because the May 26 order is void.

A defendant's sentence begins to run on the day it is pronounced by the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 42.09 § 1 (West 2006); *State v. Aguilera*,

---

[3] *See* TEX. R. APP. P. 47.1.

[4] Mercier's remaining contentions and arguments are waived for inadequate briefing. *See* TEX. R. APP. P. 38.1(i) (requiring that an appellant's brief must contain a clear and concise argument for contentions made, with appropriate citations to authorities and to the record).

165 S.W.3d 695, 697 (Tex. Crim. App. 2005) (en banc). When the oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls because the imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence. *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002).

On March 23, 2006, on remand from this Court in *Mercier I*, the trial court made the following oral pronouncement:

> THE COURT: All right. It is the judgment of the Court that [Mercier is] guilty of that conspiracy. It's the further judgment of the Court that you be confined in a state jail for a period of two years, the State of Texas do have [sic] and recover of you all costs on this behalf expended. The Court will suspend the imposition of that sentence, place you on probation for five years with a $7500.00 fine, and the conditions reflected in the State's judgment including a $40.00 per month supervisory fee, 240 hours of community service restitution.

At that point in the proceedings, Mercier's counsel immediately moved for the trial court to reduce its sentence imposed against Mercier, citing *Aguilera*. *See* 165 S.W.3d at 697. The trial court took the issue under advisement.

Based on the record, we conclude that the trial court properly reinstated the 2002 jury verdict, properly found Mercier guilty pursuant to the underlying jury verdict from 2002, and properly imposed judgment on Mercier on March 23, 2006. *See* TEX. CODE CRIM. PROC. ANN. art. 42.09 § 1; *Aguilera*, 165 S.W.3d at 697.

Following this order, the trial court reconvened for hearings on May 16, 2006 and May 25, 2006 to address Mercier's motion to reduce the sentenced imposed on March 23, 2006. At the May 25, 2006 hearing, the trial court made the following oral

7

pronouncement:

> THE COURT: All right. All right. Let's just do this formally. I am reinstating the jury's finding of guilty on the count that they found. I am sentencing you to six months in the state jail facility probated for two years.

By this oral pronouncement, the trial court effectively modified Mercier's sentence from two years' imprisonment to six months' imprisonment and reduced the suspended probationary period from five years to two years.

A defendant may file a motion in arrest of judgment before, but no later than, thirty days after the trial court imposes or suspends sentence in open court. TEX. R. APP. P. 22.3. Here, we conclude that the trial court properly imposed Mercier's sentence on March 23, 2006, and Mercier timely filed a motion which requested that the trial court modify its previous sentence. The record shows that the trial court did not immediately rule. However, at a minimum, a trial court retains plenary power to modify its sentence if a motion for new trial or a motion in arrest of judgment is filed within thirty days of sentencing. *Aguilera*, 165 S.W.3d at 697–98. In this case, Mercier's amended motion for new trial was filed within thirty days of the March 23 order, and thereby timely. Accordingly, it gave the trial court plenary power to modify the sentence on May 26, 2006. *See* TEX. R. APP. P. 21.4.

Moreover, the trial court's modified sentence remained within the statutory punishment range of a state jail felony, *see Harris v. State*, 153 S.W.3d 394, 396, n.4 (Tex. Crim. App. 2005); TEX. PENAL CODE ANN. § 12.35(a), and was pronounced in open court in the presence of Mercier, his attorney, and counsel for the State. *See Aguilera*, 165 S.W.3d at 698; TEX. CODE CRIM. PROC. ANN. art. 42.03 § 1(a) (West 2006). Accordingly, we conclude that the trial court did not err in either its March 23, 2006 or

8

May 26, 2006 ruling because it acted with proper authority, in compliance with the appropriate rules, and within its plenary power to modify Mercier's sentence. *See* TEX. CODE CRIM. PROC. ANN. art. 42.09 § 1; *Aguilera*, 165 S.W.3d at 697–98. Mercier's first issue is sustained, in part, and overruled, in part, and the State's cross-issue on appeal is overruled.

### 2. Motion for New Trial

In his final issue, Mercier contends that the trial court erred when it overruled his 2006 motion for new trial by operation of law.[5] More specifically, Mercier argues that the State withheld evidence favorable to his defense, which would establish that his alleged co-conspirator, Kenneth Plambeck, paid the State's witnesses Charlie Mora and Angelica Rhodes to illegally solicit accident victims in a manner and means unknown to Mercier before, during, or after September 1997. Mercier argues further that the withheld evidence would have allowed the trial court to properly rule on Rhodes's purported accomplice status and this would have enabled Mercier to argue that insufficient evidence existed to corroborate either accomplice in violation of his due process rights as articulated in *Brady v. Maryland. See* 373 U.S. 83, 87 (1963).

### a. Hearing Testimony

At Mercier's motion for new trial hearing, the following witnesses testified: (1) Texas Ranger Rodolfo C. Jaramillo; (2) Texas Ranger Israel Pacheco; (3) defense counsel Ricardo Salinas; and (4) State's prosecutor Sofia Arizpe. Ranger Jaramillo testified about his bribery investigation of Rhodes, who formerly worked for Mercier.

---

[5] As noted in the previous section, we concluded that Mercier's motion for new trial was filed timely within thirty days of the trial court's March 23, 2006 order. Accordingly, we disagree with the State's arguments which contend that Mercier's 2006 motion for new trial was untimely. *See* TEX. R. APP. P. 21.4.

Ranger Jaramillo based much of his testimony on his report of investigation (ROI) of Rhodes from August 1997. Ranger Jaramillo testified that he learned during the course of his investigation that Ranger Pacheco conducted a similar investigation of Rhodes involving telemarketers, attorneys, doctors, and chiropractors related to traffic accidents. Therefore, the two officers met to discuss their respective investigations. Ranger Jaramillo indicated that his investigation covered mostly Cameron County, Texas while Ranger Pacheco's investigation covered Hidalgo County, Texas. Ranger Jaramillo testified that during his discussion with Ranger Pacheco, chiropractor Kenneth Plambeck's name surfaced, but Mercier's did not. Ranger Jaramillo denied knowledge about an alleged meeting between Mercier and Plambeck on September 30, 1997, made the basis of Mercier's indictment. Ranger Jaramillo asserted that he had no knowledge about Mercier during the course of his investigation—he only knew of Plambeck and later, Mora. Ranger Jaramillo testified that his investigation of Rhodes was turned over only to the Cameron County District Attorney's Office.

Ranger Pacheco testified that he investigated Mora after learning about his alleged illegalities following Rhodes's arrest for bribery of a public official in December 1998. Ranger Pacheco testified that he never used Rhodes's cooperation to gather information against Mercier.

Defense attorney Ricardo Salinas testified that had the defense had access to Ranger Jaramillo's ROI on Rhodes prior to Mercier's conviction, the trial's result would have been different. Attorney Salinas testified that he remembered "a good portion" of the pre-trial discovery was in the Hidalgo County District Attorney's office and that he went to the DA's office for several hours over several days to review the evidence.

10

Salinas testified that he recalled discussing the Rhodes case in Cameron County, as well as Mora's pending indictment, with the prosecutor's office. However, Salinas's testimony indicates that he did not remember a lot of specifics regarding the Rhodes case in Cameron County. Salinas testified that looking back at the evidence, there is clear evidence that all of the "things that were being done were being done by [Plambeck]. . . ." Salinas contended that had this *Brady* evidence been introduced, the jury would have seen that no barratry was being committed by Mercier, but rather that Plambeck was violating a statute pertaining to telemarketers and chiropractors.

Prosecutor Sofia Arizpe testified that she believed the Jaramillo and Pacheco ROIs were irrelevant to Mercier's prosecution. Arizpe indicated that she did not know the full facts of the Rhodes bribery investigation, did not believe that Mercier was involved in that investigation, and thus did not classify it as *Brady* material. Arizpe also testified that she did not believe the Pacheco report was *Brady* material. Arizpe testified that the information Rhodes provided to the grand jury which indicted Mercier was provided to the defense, but that she was unaware of the Jaramillo ROI to give to the defense.

### b. Discussion

The grant or denial of a motion for new trial rests solely within the trial court's discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995) (en banc); *Young v. State*, 177 S.W.3d 136, 140 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd). "We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable." *Lewis*, 911 S.W.2d at 7.

A prosecutor has an affirmative duty to turn over material, favorable evidence to

11

the defense. *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). To succeed on a *Brady* claim, courts use a three-part test. We determine whether the prosecutor (1) failed to disclose evidence (2) favorable to the accused and (3) the evidence is material, meaning there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.*; *see U.S. v. Bagley*, 473 U.S. 667, 678–83 (1985).

A *Brady* claim fails if evidence was turned over in time for the defendant to use in his defense. *Little*, 991 S.W.2d at 866. (citing *Juarez v. State*, 439 S.W.2d 346, 348 (Tex. Crim. App. 1969)). Therefore, we must first determine whether the prosecutor failed to disclose evidence. *See id.* Here, Mercier argues that the Jaramillo and Pacheco ROIs were not disclosed, while the State argues that its duty to disclose exists only if the State has control over, access to, or at least knowledge of the evidence. *See Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011) (holding that *Brady* does not require prosecuting authorities to disclose exculpatory information that the State does not have in its possession and that is not known to exist). We agree with the State. The State's prosecutor testified that she was not aware of the information Rhodes had given to Cameron County investigators and, thus, was under no duty to give it to the defense. *See Pena*, 353 S.W.3d at 810; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).

Even if we assume *arguendo* that the State failed to disclose these reports to Mercier, the trial court may nonetheless have viewed the complained-of evidence as unfavorable to Mercier. Favorable evidence is any evidence that, if disclosed and used effectively, may make the difference between conviction and acquittal. *Id.*; *see Thomas*

12

*v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992) (en banc) (citing *Bagley*, 473 U.S. at 678–83). This evidence may include both exculpatory evidence and impeachment evidence. *Pena*, 353 S.W3d at 811. To distinguish the two, "exculpatory" evidence is testimony or other evidence which "tends to justify, excuse or clear the defendant from alleged fault or guilt," whereas impeachment evidence is used to "dispute, disparage, deny, or contradict." *Thomas*, 841 S.W.2d at 404. The disputed evidence would most likely have benefitted the prosecution rather than the defense. The Rhodes investigation shows that she was Mercier's employee at the time the Texas Rangers arrested her for paying Department of Public Safety employees $15.00 per accident report. When this evidence is examined against the allegations against Mercier, a trial court may view this evidence in its discretion as unfavorable to Mercier. *See id.*

Again, assuming for argument's sake that the withheld evidence was favorable to Mercier, the trial court could have determined within its discretion that in reasonable probability had the evidence been disclosed to the defense, the result of the proceeding would not have been different. Mercier argues that had the jury been aware of that Plambeck, Mora, and Rhodes were allegedly bribing officials to obtain traffic reports unbeknownst to Mercier, it is reasonably likely that there would have been a different verdict because the jury would have acquitted him as it did on the barratry counts. Mercier argues further that this evidence would have strengthened his defense of not knowing, knowingly participating in, intentionally joining the conspiracy charged, or committing the alleged act. The trial court was within its discretion to find that this purported *Brady* evidence would have either (1) weakened Mercier's case; or (2) been ignored partly or completely by the jury since it involves charges outside Mercier's

13

indictment. We conclude that the trial court did not abuse its discretion in denying Mercier's 2006 motion for new trial. Mercier's final issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
30th day of August, 2012.